Loucheim v. Casperson.

JOSEPH LOUCHEIM et al.

*v.*

ROBERT CASPERSON et al.

[Filed April 19th, 1901.]

1. Where the assignee in a deed for benefit of creditors is dead, or it is charged that in the conduct of the assignment the assignee has perpetrated a fraud, any creditor, whose claim has been proved and admitted,

34

Loucheim *v.* Casperson.

may bring suit to enforce the assignment for the benefit of himself and of the other proving creditors.

2. Non-*proving* creditors have no *status* to be admitted as parties complainant in such a suit, nor can it be extended to enforce claims against the decedent assignor's estate acquired after the assignment.

3. An assignment passes title to all the property whereof the assignor is possessed or to which he is entitled at the time of the delivery of the assignment, whether such property is mentioned in the deed or schedules annexed or not.

4. A subsequent voluntary donee of such property must account for the same to the proving creditors.

On bill, answer and proofs.

This bill is filed by the complainant, who is a creditor of Joseph L. Casperson, deceased, for the benefit of himself and all other creditors as shall aid in presenting the suit against Robert Casperson, the son and next of kin of Joseph L. Casperson, and Hannah C. Casperson and William G. Casperson, executors, &c., of William R. Casperson, defendants.

The substance of the complaint is that Joseph L. Casperson, in his lifetime, was engaged in the men's clothing business, in Salem, New Jersey, being indebted to the complainant and various other creditors in several sums, aggregating some thousands of dollars. On February 20th, 1884, he made an assignment for the benefit of his creditors to his brother, William R. Casperson, estimating his estate at the sum of $4,301. The latter undertook the trust, and stated, by his report and account to Salem county orphans court, that he had realized from the assignment $1,657.27; that the expenses of settlement were $640.87, and that he had a balance of $1,016.40 for distribution among the creditors. The aggregate of proven claims amounted to $2,728.21, the complainant Loucheim's claim being $422, on which he received as his dividend $157.21. The complainant charges that the assignor, Joseph L. Casperson, for the purpose of cheating his creditors, concealed a large portion of his assets ($2,000, or more, in cash), and arranged with his brother and assignee, William R. Casperson, that the stock and business should be sold at public auction, in large lots, on favorable terms, and be bought in by B. Frank Wood, who should pay

nothing therefor, but should, shortly after the sale, convey the property to William R. Casperson, who, as assignee, should charge himself with the price bid at the auction sale, and Joseph should pay it from his concealed assets; that this prearranged programme was carried out, a large part of the stock of the business was sold to Wood at but $931.30, none of which he paid, nor did he take possession, but shortly after the sale conveyed the property to William R. Casperson, who took possession, re-stocked the store, with Joseph L. Casperson as the manager, and the business, thus re-arranged, was so conducted until William R. Casperson's death, in 1892; that Joseph furnished the money to meet the auction bid from his concealed assets, and advanced $1,500 to William for re-stocking the store, the business being carried on apparently in William's name, with Joseph as manager, but that, in fact, William was merely a banker for Joseph, who was the real owner, and conducted the business with the funds he had concealed from his creditors, taking the profits and accounting to no one therefor; that Joseph advanced large sums to his son, the defendant Robert Casperson, out of the property he had concealed, thus defrauding his creditors, who, under the assignment, were entitled to these assets. The bill further shows that William died on September 9th, 1892, leaving a will, of which he appointed his wife and son, the defendants Hannah C. Casperson and William G. Casperson, executors, who proved William's will and undertook to execute it. The executors made no attempt to take possession of the business or stock, but to carry into effect the plan to cheat the creditors of Joseph, they, at his request, conveyed the stock and business to his son, the defendant Robert Casperson, who removed the stock, sold out the business, realizing some $2,200, or more, therefrom, with which he has purchased a house and lot in Camden. The bill further relates that Joseph shortly after died, at the home of his son, Robert; that he had previously made a voluntary conveyance to Robert of his stock and of his credits in William's hands; that no letters of administration were taken out on his estate, but that his son, Robert, has recently begun suit to recover an alleged balance of $1,800, claimed to have been

due to Joseph, in his lifetime, from William, in his lifetime, and in this suit the above-recited facts were disclosed. To the creditors of Joseph it was then, for the first time, disclosed that, by the collusion of Joseph, William and Robert, they had been cheated in the administration of Joseph's assigned estate. The bill charges fraudulent contrivance between Joseph, William and Robert Casperson to cheat the creditors under the assignment; that the assets, concealed as stated, were, and should be held to be, the property of the trust created for the benefit of the creditors of Joseph Casperson. The prayer is that an assignee may be appointed to carry out and complete the purposes of Joseph L. Casperson's assignment; that the transfers of property, by which the assets were concealed, may be declared to be void as against the creditors of Joseph, and that Robert may be decreed to hold the money and property acquired of Joseph under the assignment, and that he may account therefor to the complainant and other creditors, or to a new assignee, to be appointed in this suit, and for injunction restraining Robert from prosecuting the suit in the supreme court against William's executors, and enjoining the latter from paying the moneys claimed in that suit.

An injunction was allowed restraining Robert from any proceedings in the supreme court, beyond the recovery and entry of judgment, the issue of execution and levy thereunder, and the executors of William from paying the moneys sued for, to Robert, or to anyone else for him.

A large number of creditors under Joseph L. Casperson's assignment have come in as complainants to aid in prosecuting the suit, and to share in the recovery of assets for the assignment.

The executors of William R. Casperson answer the bill, admitting Joseph's assignment to William, the claim of the complainant thereunder, the accounting for the assigned estate by William, the payment of a dividend, and they deny knowledge of the real facts which led to the assignment, or of the concealment of Joseph's assets. They admit William's purchase of the assigned estate, through B. Frank Wood, and that William continued to hold the property until his death, in Sep-

tember, 1892, but they deny knowledge of the circumstances of the transfer to William. They admit that Joseph had the possession of the store, and that he there conducted the business, but have no information as to the details of the matter. They admit that William was Joseph's banker, and received the proceeds of sale, paid for purchase of stock, &c., and kept a running account of the moneys deposited with and expended by him in the store until about 1891, when he had $1,673.09 in hand. At this time William's health became poor, and he ceased to keep the accounts, though he received and paid out moneys on account of the store. They admit that they transferred the stock and store to Joseph's son, Robert Casperson, without any consideration therefor, except that they considered that the transfer settled all claims which Joseph might have against William on account of their business relation. They deny that they hold, or ever did hold, any money belonging to Joseph L. Casperson, or that they participated in any fraud to hinder or delay his creditors, and say that they had no knowledge that Joseph was in debt until, in the suit of Robert against them, he disclosed it.

Robert Casperson also answers. He admits Joseph's assignment to William, the accounting and the payment of the dividend. He admits that complainant proved his claim against the assigned estate, and received his dividend. He denies that that assignment was fraudulent; denies that there was any concealment of assets, and declares that the assignment was made in good faith to divide Joseph's estate among his creditors, and that this was fully accomplished. He admits the sale of a large portion of the stock to Wood, but explains that it was as a means of transferring it to William R. Casperson, and insists that the sale was in good faith, for the best attainable price in cash. He alleges that the goods were purchased by William in order to transfer them to Joseph; that William advanced the money therefor, and Joseph afterwards repaid him from the profits of the business. He admits that Joseph successfully carried on the business, and deposited his money with William as his banker, and received from him the latter's checks with which to pay for merchandise and other accounts,

and avers that at William's death there was a balance of over
$1,500 due Joseph, which has been transferred and is now due
to the defendant Robert Casperson.   He admits that the goods
and stock were not inventoried as part of William's estate, and
that they were transferred to him (Robert), and that he has
sold them and realized about $2,200 therefor.   He also admits
that Joseph voluntarily conveyed all his stock of merchandise
and property to him (Robert) ; that there was no administra-
tion upon Joseph's estate, and that the defendant has begun
the suit in the supreme court to recover from the executors
of William a balance of $1,800.   The defendant denies that
he bought the Camden house with any moneys received from
Joseph, and says it was purchased by the defendant a long
time before the death of William, with defendant's own money
and money loaned him by his aunt.   He · avers that Joseph
delivered all of his then estate to his assignee, and insists that
the auction sale was in good faith, and in no way made to hinder
creditors, &c.   He challenges the right of creditors of Joseph
to file a bill in this court until they have recovered a judgment,
which they do not allege has been done, and asks that he have
the same benefit as if he had demurred to the bill on this ground.

*Mr. Jonathan W. Acton,* for the complainants.

*Mr. I. Oakford Acton,* for the executors of William R. Casper-
son, defendants.

*Mr. William T. Hilliard,* for Robert Casperson, defendant.

GREY, V. C.

The pleadings in this cause have been stated with fullness
because of the endeavor to bring into the cause matters not
properly within the issues joined.

The first point which should be determined is the challenge
of the complainants' right to file a bill to enforce the assign-
ment until they shall first have recovered· a judgment at law.
The question has been settled in this state after some variance of
judicial opinion, by the cases of *Pillsbury* v. *Kingon, 6 Stew. Eq.*

*287*, and *Kalmus* v. *Ballin, 7 Dick. Ch. Rep. 296*. In the latter case it was determined by the court of appeals that an assignee for benefit of creditors has the right, as a trustee to whom all the property of the assignor has been transferred, to bring a suit in this court to set aside a fraudulent disposition of the assignor's estate, in avoidance of the assignment, to the extent that the property thus disposed of is needed to satisfy the demand of creditors who have proven their claims. The assignee owes to the proving creditors a duty to recover property thus fraudulently diverted, and upon request that he proceed, and failure to do so, the creditor acquires a *status* to act in his stead. *Ibid. 297*. The requirement that the assignee should be requested to proceed is, of course, based upon the assumption that he is living, and that he is not himself a party to the fraudulent disposition of property which is attacked. If the assignee be a participant in the fraud-doing, the creditors who have proved their claims, and have thus become entitled to have the trust performed, may themselves ask the aid of this court to set aside the fraud and secure so much of the property conveyed in avoidance of the assignment as may be necessary to satisfy their claims. They may assert their rights in this way without first obtaining judgment. *Terhune* v. *Sibbald, 10 Dick. Ch. Rep. 237*. If the assignee be dead when the fraud is discovered, as in this case, to deny the creditor's right to sue would be to deny him any remedy.

Several creditors who have not proved their claims under the assignment have obtained themselves to be admitted as complainants, and it is insisted that they have a *status* to have their claims determined and enforced in this suit. It is insisted that they may come in as complainants because the bill is an open one to all creditors of Joseph L. Casperson, &c., and secondly, because this suit is sought to be enforced, not only against the property which passed to the assignee under the assignment, but also against subsequently acquired property of Joseph L. Casperson, against which property (Joseph L. Casperson being dead) the non-proving creditors contend they have a *status* to sue, under the ruling in *Haston* v. *Castner, 4 Stew. Eq. 697*.

As to the first suggestion, that the non-proving claimants under the assignment may join as complainants, it cannot be. admitted that the original complainant, who has proved his claim to the assignee, and therefore has a *status* to enforce the assignment, has power, by mere invitation, to enable other creditors not within the trust to join in its enforcement and thereby receive its benefits.  As to the other point, this bill is distinctly in its premises and prayer a suit to enforce the assignment, its remedies can go no further than the securing the restoration to the *cestuis que trustent* under that trust, of the property of which they have been deprived by the fraud of the trustee.  Obviously those not within the terms of the trust cannot share in its benefits, either of procedure or of recovery. This was distinctly declared in *Kalmus* v. *Ballin, 7 Dick. Ch. Rep. 297*.  The case of *Jones* v. *Davenport, 17 Stew. Eq. 34,* in which three suits against the estate of a deceased debtor were heard together, cited to sustain the claim of the non-proving creditors, is not in point.  In that case, though heard together, the suits were not consolidated, nor were they settled, as is contended, by one decree.  A careful reading of the last paragraph of the report of the case (at *p. 52*) will show that the vice-chancellor declared the several parties to be entitled to several decrees, variant in their character, each according to the merits of his separate bill.

The case of *Haston* v. *Castner, ubi supra,* cannot aid the contention of the non-proving creditors, that a creditor-at-large may, without judgment, file a bill to set aside the fraudulent conveyance of the personal property of his deceased debtor. That case is expressly declared to be based on the statute which makes such claims against decedents, when they have been admitted by the executor, to be liens on the lands of the deceased debtor.  The statute does not extend to make such claims liens on the personal property of the deceased debtor, and in the present case the deceased debtor, Joseph L. Casperson, does not appear to have owned any lands.

The complainants' counsel has .also sought to extend the reach of the bill, to make the defendant Robert Casperson liable for damages to the assigned estate, occasioned by the assignee's mis-

behavior in so conducting the sales of the assigned goods that their price was greatly depreciated. Whether such a claim could be here entertained at all need not be looked into, for there is no evidence which charges the defendant Robert Casperson with any liability for a participation in the assignee's misconduct in conducting the sales. The only basis of claim against Robert Casperson in this suit is that he became the voluntary recipient of values, which, at the time of the assignment, belonged to that trust, and which were then fraudulently kept back from those entitled to have them, namely, the creditors who proved under the assignment. This phase of the case is hereinafter discussed.

The remaining questions involve points of law and of fact. The bill alleges that Joseph L. Casperson, at the time of making his assignment to his brother, William R. Casperson, fraudulently retained and concealed a considerable part of his assets from his creditors, with the assent of his brother, the assignee; that, at the auction sale of the larger portion of the goods, William R. Casperson, the assignee, procured Wood to purchase the goods, without consideration, who immediately conveyed them to William, without consideration; that William accounted for the purchase-price in his assignee's account, out of the funds which Joseph retained, and thereafter the store was conducted in William's name, but all the business was done by Joseph, for his own profit.

The assignment was made on February 20th, 1884. By operation of law it passed all of the property of Joseph L. Casperson to his assignee, William R. Casperson, whether that property was actuallly delivered or not. All moneys belonging to Joseph, which he had in William's hands at that time, passed, by the assignment, for the benefit of the creditors who might thereafter prove their claims. The piano which belonged to Joseph's wife, and which, on his death, came to her surviving husband *jure mariti,* belonged to Joseph at the time of the assignment, and was part of the assigned estate. When Robert received the $100 for it from the assignee, William R. Casperson, he had no right to the money—it belonged to the assigned estate.

The bill seeks an accounting only from the defendant Robert Casperson. The prayer does not ask any accounting against the defendants, the executors of William R. Casperson.

The evidence consists of a large number of exhibits, checkbook stubs and other memoranda, as well as parol testimony. The proofs show that for a long time before the assignment Joseph L. Casperson had been accumulating a considerable sum of money in the hands of William R. Casperson. There is also evidence indicating a disposition, on Joseph's part, immediately before the assignment, to turn his goods into cash. At the time of the assignment this considerable sum of money which Joseph had in William's hands was neither mentioned in the schedule annexed to the assignment, nor was it subsequently accounted for by the assignee. At the auction sale Wood, at William's request, bought in a large quantity of the stock of the store, for which he paid nothing. Wood never, in any way, took possession of the goods, but William, the assignee (who was Joseph's brother), at once took the goods, opened the store and nominally carried on the business. In fact, Joseph was not only in actual charge, but was recognized by William as the actual owner of the business to the same extent as before the assignment. This mode of conducting the business continued until September, 1892, when William died, and on March 13th, 1893, his executors voluntarily transferred the stock and store business to Robert, the son of Joseph.

Both sides agree that, under this assignment from the executors of William, Robert Casperson took title to the stock in the store, &c. There is no claim or pretence that B. Frank Wood paid anything for his purchase, or received anything for his bill of sale. It is both proven and admitted to have been a mere pretence. Nor is there any claim that Robert paid anything for the assignment of the stock to him. It was a voluntary transfer, without any consideration whatever, and gave to Robert Casperson the values which his father had in William's hands, concealed from his creditors, at the time of the assignment, and which were used by William in the purchasing and re-stocking of the goods of the store. The bill of sale from Wood to William R. Casperson, dated March 22d, 1884, is pro-

duced, and the transfer from William's executor to Robert on March 13th, 1893, is endorsed on the bill of sale. William R. Casperson, the assignee, did account for the price bid by Wood at the auction sale, but he had Joseph's money in hand with which to pay it, and it is explicitly proven by Wood himself that he paid nothing for his purchase.

The defendant Robert Casperson, claims that he cannot be called upon to respond for money earned by his father in carrying on the business after the assignment. If this were the whole case, the contention would be good. The proof shows, however, that when, immediately after the assignment, the store was re-opened in William R. Casperson's name, but, in fact, by Joseph, under that cover, Joseph's money, which had been previously hidden in William's hands, was invested in the purchase of new stock and other expenditures in carrying on the business.

This money belonged to Joseph's creditors who proved under the assignment. It remained in the business, and came to the defendant Robert Casperson, in 1893, by the transfer of the business from William's executors. Robert probably had notice of the fraudulent concealment of assets from the creditors, and of their subsequent use in the business. He was certainly aware of the fact that the store was pretended to be carried on in William's name, and of the fact that it was really owned by Joseph. He recognized entries on William's check stubs, as a showing of the moneys that came in from the store, entered on William's book, and the expenditures therefrom for Joseph's benefit in carrying on the business. Whether Robert had notice or not of the fraud at the time it was worked is, however, of little significance, for the proof is entirely clear that he was not a purchaser of the stock for value; on the contrary, he was, both from his father and from the executors of William, a mere donee, who paid nothing. It is therefore entirely equitable that Robert Casperson should account for the values which, at the time of the assignment, belonged to Joseph, but which were kept away from his creditors by the fraudulent collusion of Joseph and William, the assignee, and which have since, by voluntary gift, come to him (Robert Casperson).

There is evidence that considerable sums of money were paid to Robert by Joseph and by William, at Joseph's request, since the assignment, and the complainant contends, that as these were voluntary advances from Joseph from the earnings of the store, in which the assigned estate moneys were invested, Robert should also account to the creditors under the assignment for these advances. The store was not stocked and run solely with moneys concealed from the creditors. It is quite evident that other money, from other sources, must have been put in for the re-stocking of the store. The cash advances to Robert were made from the general profits of the business. Robert's counsel insists that the assignment creditors have no right to call upon Robert for moneys advanced to him by Joseph from the earnings of his business, after his assignment. It is, of course, true that the assignment creditors have no right to the subsequent earnings of the assignor. But the evidence shows that Joseph mixed the concealed assets, which belonged to his assignment creditors, with other moneys, probably borrowed from William, and with his own earnings. The confusion was occasioned by Joseph's wrongful and fraudulent act. Neither he nor Robert, his voluntary beneficiary, can profit thereby. The creditors, as *cestuis que trustent,* may, in such cases, either have a return of their principal moneys, fraudulently concealed, with interest, or, if clear proof be made of profits derived from the use of trust funds, they may require an accounting for all profits made by their use. In this case the evidence is not sufficiently specific to define what the profits of the business were. The mere fact that some trust funds were put in the business does not entitle the *cestuis que trustent* to all the profits of the business.

The creditors will receive their equitable rights as nearly as the evidence warrants, by restoring to them from the intermingled property the amount shown to have been kept from them, at the time of the assignment, with interest from the date of the assignment.

The defendant Robert Casperson strenuously denies that, at the time of the assignment, Joseph had any moneys in William R. Casperson's hands which were kept from the assignment creditors. One witness who testified to this was Charles Casper-

Loucheim *v.* Casperson.

son, another brother of Joseph. Charles appears to have been employed as a clerk in the store. But Charles also testifies that William R. Casperson, the assignee, covertly purchased the assigned goods at his own sale by procuring Wood to bid them in. He admits that the goods so purchased were to be held for Joseph, and that the latter always afterwards conducted the business. When this witness was asked who paid for those goods, he said he could not answer the question. Robert Casperson himself testifies that, though the goods were bought under the name of William R. Casperson, they were, in fact, from the time of the auction sale, Joseph's goods. Robert also admits that, when he finally sold out the business, he received, in all, about $2,200, accruing from different sales of the goods, &c.

The denials of these witnesses that William was, at the time of the assignment, the holder of large sums of Joseph's money, are of little weight against the contemporaneous memoranda produced, kept by William R. Casperson himself, and admitted by Robert Casperson to state the cash account between his father (Joseph) and his uncle William. These show that, before and at the time of the assignment, William had been acting as Joseph's banker, and that he then had in his hands a considerable sum of Joseph's cash which was, by law, part of the assigned estate. As above stated, these moneys were not accounted for to the assignment, but were kept back from the creditors and afterwards used for Joseph's benefit in carrying on the business. The defendant contends that these moneys were loans by William to Joseph. There may have been loans made by William to Joseph, but there is no sufficient proof of the fact. There is, however, an explicit showing that William had a considerable amount of Joseph's money for which he did not account. A cash account kept by William on his checkbook covers, and other written memoranda made about the time of the assignment, show that the amount of Joseph's money in William's hands was increased shortly before the assignment. These moneys in William's hands were just as much assets of Joseph's, which should have been applied for the benefit of the creditors under the assignment, as the stock

in the store or other visible property. The title to the moneys of Joseph in William's hands at the time of the assignment became part of the assigned estate by operation of law. When these moneys were subsequently used to carry on the business, to re-stock the store, which was given to the defendant Robert Casperson, without any consideration paid, he received, to the extent of these values, a part of the assigned estate, which he is bound to return to that trust. The amount which William R. Casperson's memoranda cash account shows he had in his hands belonging to Joseph at the entry next before the date of the assignment is $1,274.94. Robert, as voluntary transferee of the business, should account for this sum, with interest from the date of the assignment. He has received by the transfer of the business and the payments made therefrom to him much more than this sum. This, however, with the price of the piano, is, under the pleadings and proofs in this cause, the extent to which the defendant Robert Casperson should respond. If a less sum will suffice to satisfy the claims of the complainant and other creditors which have been proven under the assignment, Robert will, of course, be called upon to pay only so much as may satisfy the balance due on those claims. What the residue owing upon the proven claims is, can be readily ascertained from the statement of the dividend of the assigned estate. The creditors are entitled to so much as will restore to them the amount they have lost by the diversion of the assets of the assigned estate into Robert Casperson's hands. A receiver will be appointed, if it be necessary, in order to carry into effect the unperformed trusts of the assignment deed.

The evidence does not warrant any decree that the house in Camden was bought by Robert with assets kept from the assignment. Nor is there any evidence which justifies the allowance of an injunction, at the instance of the assignment creditors, restraining Robert Casperson from further prosecuting his suit against the executors of William R. Casperson in the New Jersey supreme court. The complainants do not themselves ask for any accounting to them in that matter. The evidence neither shows that the balance in William R. Casperson's hands, at the time of his death in 1892, was part of the original assigned estate,

hidden away in February, 1894, nor is it proven, with sufficient particularity, that it was derived from the profits on the hidden moneys.

A decree will be advised according to the views above expressed.